Mark Allen HAYDEN, Appellant,

v.

State of TEXAS, Appellee.

No. 11–03–00069–CR.

Court of Appeals of Texas,
Eastland.

Jan. 13, 2005.

Fred I. Franklin, Jr., Brownwood, for appellant.

Micheal Murray, Dist. Atty., Brownwood, for appellee.

* John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth

Panel consists of: ARNOT, C.J., and WRIGHT, J., and HILL, J.*

Opinion

JIM R. WRIGHT, Justice.

Mark Allen Hayden appeals his conviction by a jury of the offense of robbery. The jury assessed his punishment at 30 years in the Texas Department of Criminal Justice, Institutional Division. Appellant presents 11 issues in connection with this appeal. We affirm.

Appellant contends in issue one that the trial court erred when it denied his motion for instructed verdict at the close of the State's evidence; while in issue two, he urges that the evidence is factually insufficient to support his conviction. A challenge to the trial court's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Cr.App. 1993).

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or if the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Zuniga v. State*, 144 S.W.3d 477 (Tex. Cr.App.2004).

sitting by assignment.

■ A person commits robbery if, in the course of committing theft as defined in TEX. PEN. CODE ANN. ch. 31 (Vernon 2003 & Supp.2004–2005) and with intent to obtain or maintain control of the property, he or she intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02(a)(2) (Vernon 2003). Appellant argues that the evidence is insufficient to show that he threatened or placed another in fear of imminent bodily injury.

Ben Jeremiah Stembridge testified that he was working at a Brown County convenience store when a woman came in the store and asked if she could take beer out to the car, put gas in the car, and then come in and pay for it. Stembridge's testimony is that these events happened on June 25, 2001, between 8:00 and 9:00 p.m. He said that she came in twice within seconds. He related that, when he refused to let her take the beer without an "I.D.," she asked him if he wanted her to get her "old man" to come in.

Stembridge testified that shortly thereafter appellant came in. He indicated that appellant had a cap on; was wearing no shirt; had a "high level" of tattoos located on his chest, back, and stomach; was wearing shorts; and was unshaven. Stembridge identified a store video that showed tattoos on appellant's chest, stomach, and arms. He related that appellant asked him if he were "playing his woman." He said that at that point he felt threatened and was getting nervous and a little scared. Stembridge indicated that appellant went back to where the beer was kept and got a case. Stembridge said appellant told him, while making a gesture pointing at him, that, if he called the police, he would "come back and f--k me up." He stated that appellant told him that they were going to take the beer and gas and

not to call the cops. Stembridge insisted that the threat was related to appellant's taking the beer. Stembridge said that he took it as a threat; that he believed him; and that he was thinking of calling the cops, which scared him a little, and shook him up. He acknowledged that he was trained not to fight with appellant or not to physically try to keep him from taking the beer. He said he thought that, if he tried to keep appellant from taking the beer, he might get attacked and that appellant might be able to hurt him.

■ We must determine if the accused's words and conduct were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily injury. *Welch v. State*, 880 S.W.2d 225, 226 (Tex. App.-Austin 1994, no pet'n). The evidence may be sufficient even if there is no evidence that the defendant was armed or expressly threatened the victim. *Id.* at 227. We hold that appellant's appearance, words, and gesture, as set forth herein, were sufficient to place a reasonable person in Stembridge's circumstance in fear of imminent bodily injury.

Appellant urges that the evidence is insufficient because it was a conditional threat—that he merely committed the offense of theft coupled with a threat of harm in the event that the theft were reported. He primarily relies upon the cases of *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Cr.App.1989), and *Blount v. State*, 542 S.W.2d 164, 166 (Tex.Cr.App. 1976). We find both of those cases to be distinguishable.

In *Devine*, the victim's ex-wife continually threatened death or injury to him unless he gave her money. *Devine v. State, supra* at 269. The victim gave her money for a time; but when she demanded $2,500, he refused and went to the police. *Id.* After police wired him with a microphone, the victim met the defendant in a

restaurant, where she was arrested after he gave her some marked money. *Id.* The defendant told the victim at the restaurant that she had almost had him killed the day before but that she had canceled the plan when he agreed to show up with the money. *Id.* The court held that threatening to kill the victim at some time in the future if he had refused to hand over the money was not sufficient to show a threat of bodily injury or death to be inflicted imminently. *Id.* at 270–71.

In *Devine*, the evidence reflected that the victim was giving the money to the defendant because of her prior threats of future harm and in order to make a criminal case against her, not because of any words or conduct on her part at their meeting constituting a threat of imminent bodily injury. In the case at bar, appellant, who was bigger than Stembridge, was about two feet from him. Appellant appeared agitated. Appellant's appearance, language, and gesture, coupled with his threat of future harm while he was taking out the beer, were sufficient to place a reasonable person in fear of imminent bodily injury. *Id.* at 270.

In *Blount*, the court held that the evidence of a threat of future harm made after a rape was insufficient to support the charge of aggravated rape because it did not show that the rape was compelled by the threat of death, serious bodily injury, or kidnaping to be imminently inflicted on anyone, where no weapon was used and where the only threat of serious bodily injury was made after the rape, was conditioned on the victim going to the police, and related to some indefinite time in the future. *Blount v. State, supra* at 166; *see also Bright v. State,* 585 S.W.2d 739, 742 (Tex.Cr.App.1979). As in *Blount,* no weapon was used in the case at bar; and the threat related to an indefinite time in the future, conditioned on the victim con-

tacting the police. However, in the case at bar, appellant's threats of future harm, coupled with his appearance, language, and gesture, were made at the time he was taking the beer without paying for it. We believe that a jury could determine that a reasonable person in Stembridge's position would have been placed in fear of bodily injury in connection with appellant's taking the beer. We therefore find that the evidence is legally and factually sufficient to support appellant's conviction of robbery. We overrule issues one and two.

Appellant urges in issues four and five that the trial court erred when it admitted into evidence two extraneous offenses that occurred after the robbery and after he had been arrested. When defense counsel objected, he argued that the evidence constituted evidence of extraneous offenses and that it was just an attempt to smear his client by saying that he is a bad guy. The trial court had the jury removed from the courtroom and asked the State's attorney to develop the proposed line of questioning regarding the alleged extraneous offenses.

In the hearing outside of the presence of the jury, Deputy Scott Bird of the Brown County Sheriff's Department testified that, on the evening of the robbery, he began his shift at 10:00 p.m. and that he received a call from his dispatcher that someone had broken into a house to commit an assault. The dispatcher informed Deputy Bird that appellant was the suspect in the burglary. Deputy Bird went to the address where the burglary had occurred and met the victim of the assault. The victim told Deputy Bird that appellant had asked him for some money that the victim owed him and that appellant had assaulted him and left. The victim was trembling and shaking and was very nervous that appellant would return; he was scared.

Earlier, Deputy Bird, along with other officers, had received a briefing before the evening shift began. It was in this briefing that Deputy Bird learned about the robbery. Deputy Bird also learned at this briefing that appellant was the suspect in that robbery.

After talking to the victim of the burglary, Deputy Bird began looking for appellant. After another officer found appellant's pickup, Deputy Bird went to the apartment complex where the vehicle had been located. Appellant was walking up to his pickup when Deputy Bird got there. He made contact with appellant, placed him under arrest for the burglary, and put appellant in his patrol car. Deputy Bird's supervisor suggested that he look in the pickup to see if there was any evidence from the robbery, particularly the beer. As Officer Bird was going to appellant's pickup, appellant began to yell at the officer: "Stay away from [my] truck. Get away from my pickup." Deputy Bird found a case of Budweiser beer in plain view in the back of the pickup. Deputy Bird testified before the jury that there were three full beers left in the case and that there was one empty can in the case. Appellant had taken a case of Budweiser in the robbery. When Deputy Bird found the Budweiser beer case, he held it up and appellant saw that Deputy Bird had found it. At that point, appellant began to kick the back window out of the patrol car. Deputy Bird also indicated that appellant was quiet on the way to the jail because he had been sprayed with O.C. Spray after he had kicked out the window of the patrol car. When they arrived at the jail, he kicked at Deputy Don Carmack, who was helping escort appellant into the jail. Appellant "was taken to the ground."

After the hearing outside the presence of the jury, the trial court sustained appellant's objection regarding the burglary with intent to commit assault and found that the probative effect of such evidence was outweighed "by the prejudicial nature of it" and also that "it is not part of the same contextual evidence." However, the court overruled the remainder of appellant's objection because the evidence was appropriate "same contextual evidence."

When confronted with a question regarding the admissibility of evidence, we must determine whether the trial court clearly abused its discretion when it admitted the evidence. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Cr.App.1985). If a trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex.Cr.App.1997).

The law favors the admissibility of relevant evidence. *Macri v. State*, 12 S.W.3d 505, 511 (Tex.App.-San Antonio 1999, pet'n ref'd). "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403. In order to make that determination, the trial court must engage in a balancing test under Rule 403.

■ A Rule 403 balancing test includes the following factors:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some

irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Wyatt v. State,* 23 S.W.3d 18, 26 (Tex.Cr. App.2000).

■■■ The general rule in Texas is that the State is entitled to show circumstances surrounding an arrest. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Cr.App. 1985). However, when such evidence is inherently prejudicial and has no relevance to any issue in the case, the general rule no longer applies, and the evidence becomes inadmissible. *Id.* While any evidence presented by the State most likely is inherently prejudicial, it is only that evidence which is unfairly prejudicial which is excluded. *Wyatt v. State, supra* at 26. Here, however, the contested evidence was relevant to the issue of whether appellant, by his appearance, language, and conduct, placed Stembridge in fear of imminent bodily injury at the time that he stole the beer from the convenience store. Appellant's subsequent conduct shows his ability to place another in fear of imminent bodily injury and is, therefore, relevant. Further, although the evidence might impress the jury in some way, we do not think that such an impression would be such that it would be irrational in view of the charged offense and the nature of the subsequent conduct. Further, the record does not show that the time needed to develop the evidence was such that the jury would be distracted from the indicted offense. Finally, as we

have said, the evidence about which appellant complains was related to an issue in the case; and, although other evidence was offered to show that appellant placed Stembridge in fear of imminent bodily injury, the factors under Rule 403 are merely factors *included* among the factors to be considered. *Wyatt v. State, supra* at 26.

■■■ Other crimes, wrongs, or acts may also be admissible as "same transaction" contextual evidence. Such evidence is admissible when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Cr.App.1993). The fact finder is entitled to know what happened immediately before and after the commission of the charged offense so that it might be in a position to realistically evaluate the evidence. *See Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Cr.App.2000).

We hold that the trial court properly engaged in the balancing test required by Rule 403 and that it did not abuse its discretion when it admitted the other evidence of appellant's conduct. Furthermore, the evidence is admissible as "same transaction" contextual evidence. Appellant's fourth and fifth issues on appeal are overruled.

Appellant contends in his sixth issue that the trial court erred when it admitted evidence concerning his tattoos. We find no record of any objection to this testimony; consequently, nothing is presented for review. TEX.R.APP.P. 33.1(a). We overrule appellant's sixth issue on appeal.

■■■ Appellant insists in issue seven that the trial court erred in admitting into evidence testimony from Stembridge's su-

pervisor with respect to a statement Stembridge made to her after the robbery. A trial court's ruling on the admissibility of evidence is generally reviewed under an abuse of discretion standard. *Bowie v. State*, 135 S.W.3d 55, 59 (Tex.Cr.App. 2004).

Carla Jones testified that Stembridge used to be one of her "clerks." She said that on the day of the robbery she received a phone call from Stembridge. She stated that he appeared to be "[k]ind of nervous." She related that Stembridge had told her that he had been threatened. When she was asked if Stembridge had told her generally what the threat was, counsel for appellant objected on the basis that the testimony was hearsay. The trial court overruled the objection, holding that the testimony was admissible under the excited utterance exception to the hearsay rule. Jones then testified: "[Appellant] said if [Stembridge] called the cops that he would kill him."

Statements relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition are admissible under the excited utterance exception to the hearsay rule. TEX.R.EVID. 803(2). We hold that the trial court did not abuse its discretion in determining that Stembridge's statement was an excited utterance and, therefore, was admissible as an exception to the hearsay rule.

Appellant argues that the statement, even if it were an excited utterance, might be inadmissible on other grounds. The only ground he urges, however, is that Jones's testimony differs from that of Stembridge with respect to the wording of the threat. Appellant solely relies on the opinion in *King v. State*, 953 S.W.2d 266, 269 (Tex.Cr.App.1997). In *King*, the court held that a witness's statement was admissible as an excited utterance and that the

trial court, acting in its discretion, could have found that there was a basis for an opinion expressed in the statement. *Id.* at 270–71. We find that *King* is consistent with and not in conflict with this opinion. Appellant presents no authority supporting any suggestion that evidence otherwise admissible is rendered inadmissible because it is in conflict with other evidence, and we are not aware of any. We overrule issue seven.

 Appellant asserts in his eighth issue on appeal that the State permitted Stembridge to testify that the event in question occurred at approximately 8:00 or 9:00 p.m. He asserts that, since the store's security tape shows that it was still daylight outside, the robbery must have occurred at an earlier time. An appellate court may take judicial notice for the first time on appeal. *Granados v. State*, 843 S.W.2d 736, 738 (Tex.App.-Corpus Christi 1992, no pet'n). According to the website of the United States Naval Observatory, at www.usno.navy.mil, sunset occurred in Brown County on June 25, 2001, at 8:45 p.m., and civil twilight occurred at 9:13 p.m. Consequently, there is no inconsistency between Stembridge's testimony and the store security tape.

Appellant also suggests that Stembridge's testimony that he had voluntarily quit his employment at the store following the event in question was perjured because it conflicted with the testimony of Jones. Actually, Jones testified that, when she talked with Stembridge following the robbery, she tried to talk to him and calm him down. She stated that, when she came in the next day, Stembridge had left a note saying that he was not coming back. She said she took that to mean that he had quit. Consequently, there is no conflict between Stembridge's testimony and that of Jones. We overrule issue eight.

Appellant argues in his ninth issue on appeal that the trial court erred when it overruled his pretrial application for writ of habeas corpus and refused to permit him to be released on a personal bond. However, as appellant notes in his brief, the decision as to whether to permit a person accused of a crime to make a personal bond is within a magistrate's discretion. TEX. CODE CRIM. PRO. ANN. art. 17.03(a) (Vernon Supp.2004–2005). Appellant cites the general provision in TEX. CODE CRIM. PRO. ANN. art. 17.15(2) (Vernon Supp.2004–2005) that the power to require bail is not to be so used as to make it an instrument of oppression. Article 17.15(2). He presents no argument or authority as to why in his case the trial court's denial of his request for personal bond constituted using the power to require bail so as to make it an instrument of oppression. We overrule appellant's ninth issue on appeal.

In his third and tenth issues on appeal, appellant complains that he received ineffective assistance of counsel. In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770 (Tex.Cr.App.1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508–09 (Tex.Cr. App.1991).

In his third issue on appeal, appellant argues that his trial counsel was ineffective in making a motion for an instructed verdict before the State had rested. Appellant contends that, by making the motion prematurely, the State was able to recall Stembridge and offer additional testimony to bolster its case. The record is silent as to why appellant's trial counsel chose to make a motion for instructed verdict before the State had rested its case. An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct. *Thompson v. State*, 9 S.W.3d 808 (Tex.Cr.App.1999). Moreover, TEX. CODE CRIM. PRO. ANN. art. 36.02 (Vernon 1981) provides that the trial court may "allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." The trial court should allow a party to reopen its case if the evidence would materially change the case in the proponent's favor. *Peek v. State*, 106 S.W.3d 72, 79 (Tex.Cr. App.2003). Therefore, had trial counsel moved for an instructed verdict after the State rested, the trial court may have allowed the State to reopen its case and offer the additional testimony.

In his tenth issue on appeal, appellant complains that his trial counsel was ineffective in failing to adequately prepare for trial. Appellant alleges several instances in which he contends his trial counsel was deficient in his trial preparation. To defeat the presumption of reasonable professional assistance, any allegation of ineffec-

tiveness must be firmly founded in the record; and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State, supra; McFarland v. State,* 845 S.W.2d 824 (Tex.Cr.App.1992), *cert. den'd,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Appellant's contentions are not supported by the record. Appellant has not shown that trial counsel's decisions were not based on sound trial strategy. Therefore, appellant has not shown that he received ineffective assistance of counsel. Appellant's third and tenth issues on appeal are overruled.

 In his eleventh issue, appellant complains that the trial court erred in allowing the State to intimidate a defense witness. During the punishment phase of the trial, appellant called Sylvia Bessette to testify.[1] Bessette stated that appellant had previously been convicted for the offense of indecency with a child and that she was the victim of that offense. Bessette testified that appellant did not commit that offense. On cross-examination, the State questioned Bessette about statements she made to an investigator concerning the offense. Bessette stated that she did not recall making some of the statements. The State informed Bessette that she was testifying under oath and that "if you get up while under oath and tell a lie ... that could be considered aggravated perjury." The State then told Bessette the penalty range for a third degree felony.

Appellant objected, arguing that the State was trying to intimidate the witness. The trial court instructed the State that it could only inform Bessette on the distinction between perjury and aggravated perjury. Bessette stated that she was aware

of the distinction, and there were no further questions concerning perjury.

The record does not support appellant's argument that the State threatened or harassed Bessette. The State informed Bessette of the consequences of lying under oath. *See Webb v. State,* 503 S.W.2d 799 (Tex.Cr.App.1974). Appellant has not shown that the trial court erred in overruling his objection to the State's comments on perjury. Appellant's eleventh issue on appeal is overruled.

A majority of this court affirms the judgment of the trial court.

Dissenting Opinion by JOHN G. HILL, Justice.

JOHN G. HILL, Justice, dissenting.

I respectfully dissent because the trial court abused its discretion by admitting evidence that Hayden, after his arrest, kicked out the back window of the patrol car and that, while being taken to jail, he kicked Deputy Carmack. Even if the evidence is relevant, what little probative value it might have is substantially outweighed by the danger of unfair prejudice.

The majority correctly sets forth the four principal factors to be considered in applying a Rule 403 balancing test. The first factor is how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense. In discussing this factor, the majority concludes that the evidence in question was relevant. It specifically mentions that it is relevant to show Hayden's ability to place another in fear of imminent bodily injury. The issue before the jury was whether Hay-

---

1. The record shows that Bessette had her attorney present to advise her during her testimony.

den's words, appearance, and conduct placed the complainant in fear of imminent bodily injury, not whether Hayden had the ability to do so. Consequently, I would not characterize Hayden's ability to place the complainant in fear of imminent bodily injury to be a fact of consequence under the facts of this case. The evidence of Hayden's extraneous conduct was weak with respect to whether Hayden committed the charged offense. The application of a Rule 403 balancing test is really not necessary if the evidence offered has no relevance. Consequently, the issue under the first factor is not whether the evidence is relevant but how compellingly it serves to make a fact of consequence more or less probable. The majority does not really discuss whether the evidence of Hayden's conduct subsequent to his arrest served to make a fact of consequence more or less probable other than to say it was relevant to the issue of his ability to commit the offense. It may be that the majority feels that evidence related to a defendant's arrest is admissible even if inherently prejudicial if it has any relevance at all. However, such evidence is inadmissible if it is inherently prejudicial and has little or no relevance to any issue in the case. *Smith v. State*, 646 S.W.2d 452, 457 (Tex.Cr.App. 1983).

Unlike the majority, I would conclude that the evidence of Hayden's violent conduct at the time of his arrest would impress the jury in some irrational but nevertheless indelible way. Although such evidence has little if any probative value with respect to whether Hayden's appearance, conduct, and words at the time he stole the beer placed the complainant in fear of imminent bodily injury, it does constitute evidence that Hayden is a violent person generally. Such testimony would be unfairly prejudicial to the jury determining whether his actions at the time he stole the beer placed the complainant in fear of imminent bodily injury.

I agree that the proponent needed little time to develop the evidence. As the majority notes, the State had ample evidence other than Hayden's extraneous offenses to show the jury Hayden's conduct, appearance, and words at the time he stole the beer. I would hold that the trial court abused its discretion in admitting the evidence in question because its probative value is substantially outweighed by the danger of unfair prejudice.

The majority also suggests that evidence of Hayden's violent conduct after his arrest was admissible as same transaction contextual evidence. Same transaction contextual evidence is deemed admissible where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Cr.App.1993). The State had no problem showing the offense for which Hayden was charged, without the necessity of showing his violent conduct following his arrest. Hayden's actions after his arrest were not so intermixed, blended with, or connected to the primary offense for which he was charged so as to form an indivisible criminal transaction. Evidence of these subsequent offenses was also not necessary to place in context the offense for which Hayden was charged. Consequently, the evidence does not constitute same transaction contextual evidence. The majority holds that it does, without any discussion as to how the evidence meets the criteria.

I would sustain Hayden's issues four and five and remand this cause for further proceedings.