**Opinion filed September 17, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00336-CR

_____

### JODY ALEXANDER ORDWAY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 21009B**

## MEMORANDUM OPINION

The jury convicted Appellant, Jody Alexander Ordway, of aggravated kidnapping. *See* TEX. PENAL CODE ANN. § 20.04 (West 2019). The jury then assessed Appellant's punishment at confinement for a term of forty-five years in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine, and the trial court sentenced him accordingly. In two issues on appeal, Appellant argues (1) that his recorded statement to law enforcement was taken in

violation of Article 38.22 of the Texas Code of Criminal Procedure and (2) that his trial counsel was ineffective. We affirm.

*Background Facts*

In the early morning hours of August 2, 2016, the body of Ronald Varner was found on a county road in Jones County, Texas. Varner had been shot several times—resulting in his death—and left in the roadway. After a three-month investigation, Appellant was identified as a suspect along with Euella Cooper, Michael Pine, Olyvia Jackson, and Matthew Struble.

According to testimony presented at trial, the five suspects were thought to be involved in a criminal enterprise affiliated with the Aryan Brotherhood. The group sold "a fair amount of drugs." Cooper and Pine were identified as the leaders of the group. Appellant, Jackson, and Struble were described as the "foot soldiers" who carried out the requests of Cooper and Pine.

On February 9, 2017, Appellant was interviewed by Texas Ranger Danny Crawford after being arrested for an unrelated offense. Ranger Crawford did not read the *Miranda*[1] warnings to Appellant when he met with Appellant. When questioned about his decision not to notify Appellant of his *Miranda* rights, Ranger Crawford said:

> I was not detaining [Appellant] at that time. I did not have him under arrest. I don't even remember if maybe the sheriff's office had him under arrest. Why he was there was of no concern of mine. I explained to him why I wanted to talk to him and also explained to him that he didn't have to talk to me, and if he decide [sic] to talk to me, he could stop at any time he wished.

Nevertheless, an audio recording of the forty-five-minute interview was played at Appellant's trial without objection.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

According to Appellant's recorded interview, Varner stole some pocketknives that belonged to Pine's deceased brother. Cooper, Pine, Struble, and Jackson then began beating Varner for stealing the pocketknives. Varner was then stripped of his clothing and held against his will by Struble and Jackson while Cooper and Pine left for more than thirty hours. Appellant stated that he did not beat Varner or help restrain him but that he did lock the door to the house while the others attacked Varner. He further indicated that he did not want to be involved but was afraid of what would happen to him if he did not follow Cooper's and Pine's orders. After multiple beatings and many hours of being restrained, Appellant helped Varner clean up his wounds. Varner then left the house in a car with Struble and Jackson. Struble and Jackson returned the following morning covered in blood spatter, without Varner.

In addition to Appellant's recorded interview, the State also presented the testimony of Jackson, who was convicted of Varner's murder and sentenced to incarceration for a term of fifty years. According to Jackson, Appellant *did* engage in the beatings of Varner and, additionally, took turns holding a gun on Varner to restrain him while Cooper and Pine were gone. Appellant testified and confirmed that the events occurred "about the way" the State presented them. Appellant also testified that he only did what he did because he was scared for his life and did not want to end up like Varner.

At the conclusion of the testimony, Appellant requested and was granted a jury instruction on duress. Nevertheless, the jury convicted Appellant and sentenced him to incarceration for a term of forty-five years. This appeal followed.

*Recorded Interview*

In Appellant's first issue, he argues that his recorded interview was taken in violation of Article 38.22 of the Texas Code of Criminal Procedure. Rule 33.1(a) of

the Texas Rules of Appellate Procedure, however, "provides that a complaint is not preserved for appeal unless it was made to the trial court 'by a timely request, objection or motion' that 'stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.'" *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Id.*

In *Resendez*, the Court of Criminal Appeals held that the defendant failed to preserve an Article 38.22 complaint for appellate review because his objection at trial "contained little more than a citation to the statute and did not bring the specific violation of Article 38.22 to the trial court's attention." *Id.* at 313, 317. In the present case, Appellant failed to make *any* objection—pretrial or otherwise—to the introduction of Appellant's recorded interview. An Article 38.22 argument simply was not presented at trial—let alone "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). Therefore, we conclude that Appellant has not preserved his first issue concerning whether his statement was taken in violation of Article 38.22. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel*

In Appellant's second issue, he contends that his trial counsel was ineffective. We review a claim of ineffective assistance of counsel under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong: "First, the defendant must show that counsel's performance was deficient. . . .

Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Appellate review of a defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

To overcome this presumption, an appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Importantly, "[d]irect appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). A silent record that provides no explanation for a counsel's actions will not overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Thompson*, 9 S.W.3d at 813–14; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). Further, if trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed*, 187 S.W.3d at 392; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Here, Appellant complains that, among other alleged inadequacies, his trial counsel failed to object to the admission of the recorded interview with law enforcement; allowed the State to show the jury a gruesome picture of the victim without objection; allowed Ranger Crawford to discuss rigor mortis and other subjects without objections concerning his qualifications as an expert; allowed another officer to testify about criminal organizations without objection concerning her qualifications as an expert; and allowed an officer to testify as to the motive for the murder. The record, however, is silent as to any potential trial strategy that trial counsel may have employed. Appellant did not assert his claim of ineffective assistance in a motion for new trial. Accordingly, Appellant's trial counsel has not had an opportunity to explain his trial strategy. Therefore, on this record, Appellant has failed to overcome the strong presumption of reasonable assistance. *See Thompson*, 9 S.W.3d at 814.

Additionally, Appellant's argument is undermined by his utilization of a duress defense at trial, which required Appellant to admit to every element of the offense. *Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). To be sure, nearly every complained-of act by Appellant's trial counsel bolstered the assertion that Appellant was acting under duress and in fear of retaliation from dangerous criminals. Consequently, even if the record were sufficiently developed, it is unlikely that Appellant could prove his trial counsel's performance was deficient.

Based on our review of the record, we cannot conclude that Appellant's trial counsel's actions were so outrageous that no competent attorney would have engaged in them. *See Goodspeed*, 187 S.W.3d at 392. Because Appellant failed to meet his burden on the first prong of Strickland, we need not consider the

6

requirements of the second prong.  *Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011).  We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


September 17, 2020

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.